# Exhibit A




# Industry-Wide Agreement

between

New York Hotel and Motel Trades Council, AFL-CIO

and

Hotel Association of New York City, Inc.

(Effective July 1, 2012)

## CONTENTS

**Introduction - A Message from HTC President Peter Ward** .......... v
**Industry-Wide Agreement** .......... 1
Preamble .......... 1
Article 1 .......... 1
Article 2 - Excluded Categories .......... 2
Article 3 - Union Membership .......... 2
Article 4 - Union Dues .......... 3
Article 5 .......... 3
Article 6 - New Employees .......... 4
Article 7 - Hotel Classification .......... 5
Article 8 - Part-time Work and Premium Pay; Substitute and Extra Employees .......... 5
Article 9 - Extra Painters .......... 8
Article 10 - Housing-meals .......... 8
Article 11 - Working Hours, Meal Period, Overtime, Etc .......... 8
Article 12 - Minimum Wage .......... 10
Article 13 - Wages .......... 11
Article 14 - Wage Increases .......... 12
Article 15 - Extra Rooms .......... 12
Article 16 - Cots .......... 13
Article 17 - Major Structural Alterations .......... 13
Article 18 - Employer Rules and Regulations .......... 13
Article 19 - Duties of Excluded Categories .......... 14
Article 20 - Relief Employees .......... 14
Article 21 - Hiring .......... 14
Article 22 - Management Rights .......... 17
Article 23 - Seniority .......... 17
Article 24 - Union Activity .......... 19
Article 25 - No Discrimination .......... 19
Article 26 - Complaints, Grievances and Arbitration .......... 20

Article 27 - Discharge and Discipline ..... 21
Article 28 - Vacations ..... 23
Article 29 - Holidays ..... 25
Article 30 - Personal Days ..... 27
Article 31 - Jury Duty ..... 28
Article 32 - Bereavement Pay ..... 29
Article 33 - Health Benefit Funds ..... 29
Article 34 - 401(k) Plan ..... 29
Article 35 - Pension Fund ..... 30
Article 36 - Training and Scholarship Fund ..... 30
Article 37 - Legal Fund ..... 31
Article 38 - Strikes and Lockouts ..... 31
Article 39 - Contract with Non-member Hotels ..... 32
Article 40 - Status Quo Agreement of March 23, 1938 ..... 33
Article 41 - Modification of this Agreement ..... 33
Article 42 - Visitation Clause ..... 33
Article 43 - Notices ..... 34
Article 44 - Cost of Living ..... 34
Article 45 - Area Standards and Work Preservation ..... 34
Article 46 - Furnishing Security ..... 35
Article 47 - Banquet Department ..... 35
Article 48 - Relief Appeals ..... 40
Article 49 - Uniforms and Employee Facilities ..... 40
Article 50 - Groups and Porterage ..... 41
Article 51 - Night Shift Differential ..... 42
Article 52 - Severance Pay ..... 43
Article 53 - Technological Change ..... 43
Article 54 - Sick Leave ..... 44
Article 55 - Leave of Absence ..... 45
Article 56 - Voluntary Political Action Fund ..... 46
Article 57 - Conversion of Residential Units ..... 46

Article 58 - Authority to Enforce Contract ..... 46
Article 59 - Successors and Assigns ..... 46
Article 60 - Accretion and Neutrality/Card Check ..... 49
Article 61 - Maintenance and Electrical Work ..... 50
Article 62 - Union Training ..... 51
Article 63 - Spotters ..... 51
Article 64 - Hidden Surveillance Cameras ..... 52
Article 65 - Bankruptcy ..... 53
Article 66 - Electronic Information ..... 53
Article 67 - Immigrants' Rights ..... 54
Article 68 - Translations ..... 55
Article 69 - Safety and Health ..... 55
Article 70 - Panic Buttons ..... 57
Article 71 - Adequate Supplies ..... 58
Article 72 - Expiration and Renewal ..... 58
Article 73 - Separability ..... 59
Article 74 - Ratification of Agreement ..... 60
Schedule 1 ..... 61
Schedule A - Minimum Wage Scales ..... 62
Schedule A-1 - Classification of Meals, Hours and Wages for Banquet Servers & Banquet Captains ..... 77
Schedule A-2 - Vacations, Call-in Pay and Holiday Pay for Checkroom and Washroom Attendants ..... 83
Schedule A-3 - Vacations and Holidays for Steady Extra Banquet Bartenders ..... 84
Schedule B - Employee Benefit Funds ..... 86
Addendum I ..... 96
Addendum II ..... 96
Addendum III ..... 97
Addendum IV ..... 97
Addendum V ..... 100
Addendum VI ..... 101

Addendum VII - Study Committee........................................................ 101
Form of Voluntary Contribution Deduction Authorization ...................... 105
Side Letter to IWA (1)........................................................................... 106
Side Agreement (2) .............................................................................. 107
Side Agreement (3) .............................................................................. 108
**INDEX..................................................................................................... 109**

citizenship status, religion, disability, sexual orientation, union activity or any factor illegal under federal, state or city law is hereby recognized by the parties to this Agreement.

## COMPLAINTS, GRIEVANCES AND ARBITRATION

26. (A) All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article. Any such complaint, dispute or grievance involving an EMPLOYER member of the ASSOCIATION shall, in the first instance, be submitted to the Labor Manager who will be appointed and employed by the ASSOCIATION, to consider and adjust with a duly accredited representative of the UNION, for their joint consideration and adjustment; if they agree, such decision shall be binding on the parties hereto. The meeting before the Labor Manager shall, at the request of either party, be scheduled for the first mediation date following the earlier of a hotel level meeting, or the expiration of a period of five (5) business days after the request for a hotel level meeting by either party. Should the matter not be resolved by the Labor Manager and the representative of the UNION, it shall then be referred to the Impartial Chairperson as aforesaid.

(B) In the event of a willful default by either party in appearing before the Impartial Chairperson, after due written notice shall have been given to the said party, the Impartial Chairperson is hereby authorized to render a decision upon the testimony of the party appearing.

(C) Non-ASSOCIATION member hotel and concessionaire EMPLOYER complaints, disputes, or grievances are to be taken directly to the Impartial Chairperson.

(D) If any EMPLOYER experiences an unanticipated emergency which justifies relief from the provisions of Article 45(B) the matter—if unresolved between the EMPLOYER and the UNION—may be submitted to the Impartial Chairperson who may grant such relief as s/he deems proper. If relief is granted, the Impartial Chairperson may make such provisions for the employees involved as s/he deems appropriate. The Impartial Chairperson may not grant relief predicated solely upon economic factors.

(E) The parties consent that any papers, notices or process, including subpoenas, necessary or appropriate to initiate or continue an arbitration hereunder or to enforce or confirm an award, may be served by ordinary mail directed to the last known address of the parties or their attorneys, or when authorized by the Impartial Chairperson, by telegram, fax, e-mail or telephone.

(F) The parties consent that all arbitration hearings shall be heard at the Office of the Impartial Chairperson located at 321 West 44th Street in the City of New York, or at such other place as the Impartial Chairperson may designate.

(G) The Impartial Chairperson may call such arbitration hearing on giving five (5) days' notice to all of the interested parties. The Impartial Chairperson, however, may call a hearing on shorter notice if s/he deems it appropriate.

(H) The parties hereby expressly waive the requirements regarding the Arbitrator's oath and the manner and time for the service of notice of hearing contained in the Civil Practice Law and Rules of the State of New York and agree and consent that the Impartial Chairperson may proceed with the hearing.

(I) The compensation of the Impartial Chairperson and his/her proper and necessary expenses shall be shared and paid equally by the ASSOCIATION and the UNION.

(J) Should the Impartial Chairperson resign, refuse to act, or be incapable of acting, or should the office become vacant for any reason, the ASSOCIATION and the UNION shall immediately and within five (5) days after the occurrence of such vacancy, designate another person to act as such Impartial Chairperson. If they fail to agree, the United States District Court, Southern District of New York, shall, upon application of either party, on due notice to the other, summarily make such appointment.

(K) The decision rendered by the Impartial Chairperson shall have the effect of a judgment entered upon an award made, as provided by the Arbitration Laws of the State of New York, entitling the entry of a judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by such decision.

(L) Effective for instances which arise after the effective date of this Agreement, an EMPLOYER found by the Impartial Chairperson to have (1) shown a pattern of repeated violations of a similar type and nature which supports a finding of an intentional and bad faith contractual violation; or (2) willfully violated a clearly defined contractual provision or hotel-specific established practice relating to scheduling, layoff, recall, wage or a wage-related provision, and that in either case above, i.e., (1) or (2), where such violation has resulted in a monetary award to the affected employees the Impartial Chairperson shall award to such employees an additional amount equal to fifteen percent (15%) of the awarded amount. It is understood that this provision shall not apply to situations where the Impartial Chairperson finds that the EMPLOYER has relied upon a reasonable good faith interpretation of the Agreement(s).

## DISCHARGE AND DISCIPLINE

27. (A) General

(1) The EMPLOYER shall have the right to discharge or discipline any employee. The UNION may question whether an employee's discharge or discipline was for just cause.

(2) In the case of ASSOCIATION Labor Relations Group member EMPLOYERS, the UNION shall submit the matter to the Labor Manager within ten (10) days after a discharge and, should the matter not be adjusted by the Labor Manager under the procedure set forth in Article 26, the UNION may submit the matter to the Impartial Chairperson within ten (10) days after the conference before the Labor Manager for decision as any other dispute under this Agreement. In the case of non-ASSOCIATION Labor Relations Group member EMPLOYERS, the UNION shall submit the

## EMPLOYEE BENEFIT FUNDS
## SCHEDULE B

SUPPLEMENTAL AGREEMENT dated the 1st day of July, 2012 between the HOTEL ASSOCIATION OF NEW YORK CITY, INC., hereinafter called the ASSOCIATION, and the operators of hotels who are Bargaining Group Hotels of the ASSOCIATION, and with respect to whom the UNION (as hereinafter designated) has been designated as sole collective bargaining agent for the employees in the hotels and concessionaires covered by this Agreement, and who shall become signatories or otherwise parties hereto, each and every such signatory and/or party hotel and concessionaire being hereinafter referred to as the EMPLOYER, and the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO, hereinafter called the UNION, in its own behalf and in behalf of its members, now employed or hereinafter to be employed by the EMPLOYER.

WHEREAS, the ASSOCIATION, the EMPLOYER and the UNION have simultaneously herewith executed a Collective Bargaining Agreement; and

WHEREAS, as part of the consideration for the execution of the Collective Bargaining Agreement, the EMPLOYER agreed to contribute sums of money equal to a stated percentage of its payroll or a specific amount to the Funds (as defined below) to be used to provide various medical, accident and sickness, life insurance, pension, legal services and industry training benefits to employees covered by the Collective Bargaining Agreement, and employed by the EMPLOYER, medical and legal services benefits to the families of such employees, health care benefits to the enrolled domestic partners of such employees and scholarship benefits to the children of such employees, all as determined by the Trustees; and

WHEREAS, the Agreement effective July 1, 2006 made between the parties is superseded by the Collective Bargaining Agreement executed simultaneously herewith and it is desired to continue payments to the Funds to provide the benefits hereinafter set forth,

NOW, THEREFORE, in consideration of the promises, the EMPLOYER and the UNION agree that the Collective Bargaining Agreement shall be supplemented by adding hereto the following provisions:

1. Effective July 1, 2012, the Supplemental Agreement contained in this Schedule B is intended to supersede and replace in its entirety Schedule B of the July 1, 2006 Agreement.

2. Definitions. For purposes of this Supplemental Agreement, the following terms shall have the following meanings:

The term "employees of the EMPLOYER," means, unless otherwise provided, all of the employees of the EMPLOYER who are covered by and are entitled to the benefits of the Collective Bargaining Agreement, certain employees of the New York Hotel Trades Council and Hotel Association of New York City, Health Center, Inc. and the New York Hotel Trades Council and Hotel Association of New York City, Inc. Em-

ployee Benefit Funds, and certain employees of the UNION and those of its affiliated local unions which have agreed to contribute to the Funds.

The term "family" means an employee's spouse, unmarried children, stepchildren, foster children and adopted children under age nineteen (19), provided they depend on the employee for more than half of their support, and unmarried children, regardless of age, who are unable to support themselves as a result of a physical, developmental or mental illness or condition which incapacitated the child prior to reaching age nineteen (19). The term family will also include full-time students who are dependents of covered employees until the last calendar day of the calendar year in which said dependent reaches twenty-six (26) years of age.

The term "domestic partner" means a person who is living with an employee and sharing financial responsibility with the employee for their joint household. Domestic partners of eligible fund participants will be treated as qualified dependents and eligible for Health Benefits Fund benefits.

The term "wages", for purposes of calculating EMPLOYER contributions equal to a percentage of employee wages, shall be defined as including vacation pay, overtime pay, holiday pay, sick leave pay, personal day pay, jury duty pay, bereavement pay, value of meals and lodgings where such are part of an employee's wages commencing from the first day of employment, whether such employment be permanent, temporary, casual, part-time or extra, and banquet servers' tips. Notwithstanding the foregoing, an employee's wages in excess of the amount of earnings at which the EMPLOYER'S FICA contributions are required shall not be taken into account in calculating EMPLOYER contributions to the Funds. Further, "wages" are limited as set forth in Article 6(D) of the Collective Bargaining Agreement regarding the date as of which contributions must commence to be made to certain of the Funds on behalf of new employees.

The term "Funds" means the New York Hotel Trades Council and Hotel Association of New York City, Inc. Health Benefits Fund, Pension Fund, Prepaid Legal Services Fund and Industry Training and Scholarship Fund.

3. The Health Benefits Fund

(A) Effective January 1, 1999, the New York Hotel Trades Council and Hotel Association of New York City, Inc. Insurance Fund, Union Family Medical Fund and Dental Fund were merged into a single fund renamed the "New York Hotel Trades Council and Hotel Association of New York City, Inc. Health Benefits Fund" (the "Health Benefits Fund"). Said merged fund is the successor to the separate Union Family Medical, Insurance and Dental Funds and, as such, provides multiple plans of benefits, including a medical benefits plan (formerly provided by the Union Family Medical Fund), a hospital and insurance benefits plan and an optical benefits plan (formerly provided by the Insurance Fund), and a dental benefits plan (formerly provided by the Dental Fund). Effective July 1, 2012, the EMPLOYER shall make a single, aggregate monthly contribution to the Trustees of the Health Benefits Fund for all benefit plans within that Fund covering the employees of the EMPLOYER equal to the following amounts (or such amounts as may be agreed upon from time to time by the UNION and the ASSOCIATION):

| CONTRIBUTION RATE | BENEFIT COVERAGE |
|---|---|
| (a) Effective January 1, 2012, 20.5% of employee wages. Effective July 1, 2012, 21% of employee wages. Effective January 1, 2015, 21.5% of employee wages. Effective January 1, 2016, 22% of employee wages. Effective January 1, 2017, 22.5% of employee wages. | Combined Medical and Insurance (Hospital Life, Accidental Death and Dismemberment, Short-Term Disability)[1] |
| (b) $1.50 per employee per month | Optical Benefits [2] |
| (c) 2.00% of employee wages | Dental Benefits [3] |

Notwithstanding the foregoing, the Trustees shall maintain the projected liquid assets of the Health Benefits Fund at the end of each calendar year at not less than twenty-five percent (25%) of the following year's expenses of the Fund. Those contributions expressed as a percentage of wages shall be computed with respect to wages payable to the employees of the EMPLOYER for the preceding pay period. All contributions to the Health Benefits Fund shall be administered and expended by the Trustees pursuant to the provisions of the Fund's trust instrument (identified below) for the purpose of providing medical, accident and sickness and insurance benefits to the employees of the EMPLOYER and medical benefits to the families and enrolled domestic partners of such employees, all as determined by the Trustees. Effective January 1, 2012, EMPLOYERS acknowledge and agree that they shall maintain all benefits currently provided by the Health Benefits Fund at no less than current eligibility and coverage during the life of this Agreement, and in no event shall any benefit, eligibility, or coverage be reduced for any reason absent signed agreement by the parties to the contrary.[123]

(B) In the event that legislation is enacted by the Federal, State or Municipal Governments levying a tax or other exaction upon the EMPLOYER for the purpose of establishing a Federally, State or Municipally administered system of medical, life, health and accident, or hospitalization insurance benefits under which the employees of the EMPLOYER are insured, the EMPLOYER shall be credited, against the sums otherwise payable hereunder for each pay period, with the amount of such tax or exaction payable by it for such pay period.

(C) The Health Benefits Fund will provide up to thirty (30) days of in-patient psychiatric coverage. It is understood that in the event legislation is enacted which requires modification of this benefit, the parties agree to meet to discuss the impact

*1 Such contributions will be due with respect to each employee of the EMPLOYER from the employee's initial date of employment.*

*2 Such contributions will be due with respect to each employee on the EMPLOYER'S payroll on the fifteenth (15th) day of each month.*

*3 Such contributions will be due with respect to each employee of the EMPLOYER immediately after the completion of nine (9) months of employment. The foregoing provision shall not apply to any employee who, during the twenty-four (24) months prior to his/her employment, was continuously employed for a period of twelve (12) months by an EMPLOYER signatory or party to the Collective Bargaining Agreement.*

of such mandated modification of this benefit in order to maintain the then current contribution rate.

(D) Effective January 1, 2012, the parties agree that a medical facility in Brooklyn, New York, substantially comparable to the current facility operating in Harlem, New York is essential, and shall promptly effect the acquisition of realty, disposition of the current Brooklyn facility, construction of the new facility toward completion, and commencement of operations of such facility as soon as possible.

4. The Pension Fund

(A) Effective July 1, 2006 the EMPLOYER shall increase its rate of contribution to the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund from seven percent (7%) to nine percent (9%) (or such percentage as may be agreed upon from time to time by the UNION and the ASSOCIATION) of the wages payable to the employees of the EMPLOYER for the preceding pay period, to be administered and expended by the Trustees pursuant to the provisions of the Fund's trust instrument (identified below) for the purpose of providing pensions to the employees employed by the EMPLOYER.[4] Effective July 1, 2013, the EMPLOYER shall increase its rate of contribution to the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund from nine percent (9%) to nine and one-half percent (9.5%). Effective July 1, 2016, the EMPLOYER shall increase its rate of contribution to the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund from nine and one-half percent (9.5%) to ten percent (10%). Effective July 1, 2018, the EMPLOYER shall increase its rate of contribution to the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Pension Fund from ten percent (10%) to ten and one-half percent (10.5%). Such contributions will be due with respect to each employee of the EMPLOYER immediately upon the completion of nine (9) months of employment. The foregoing provision shall not apply to any employee who, during the twenty-four (24) months prior to his/her employment, was continuously employed for a period of twelve (12) months by an EMPLOYER signatory or party to the Collective Bargaining Agreement, for whom contributions shall be made from the employee's initial date of employment.

(B) The EMPLOYER and the UNION agree that, subject to all of the terms and conditions set forth in the Pension Fund's Rules and Regulations, the following increases in monthly pension benefit payments will be implemented in accordance with the following table for employees in active covered employment who are not Pensioners as of the effective dates set forth below:

*4 Effective January 1, 2012 and for a period of one (1) year thereafter or such other time period as determined by the Funds, the 0.5% contribution to the Prepaid Legal Fund shall be suspended and reallocated to the Pension Fund.*

| EFFECTIVE DATE | REGULAR MAXIMUM MONTHLY BENEFIT | AGE AND SERVICE PENSION (25 YEARS OF SERVICE AND AGE 55) |
|---|---|---|
| July 1, 2003 | $850 per month | $800 per month |
| July 1, 2004 | $950 per month | $850 per month |
| July 1, 2005 | $1,000 per month | $875 per month |

In addition, effective July 1, 2001, as approved by the Trustees, Participants in Covered Employment on June 30, 2001 whose Pension Effective Date occurs thereafter shall accrue an additional Regular Pension benefit of twenty dollars ($20) per Pension Credit for each Pension Credit in excess of twenty-five (25), up to a maximum of forty (40) Pension Credits. This additional accrual does not apply to Participants retiring on an Age and Service Pension.

It is acknowledged and agreed that the Trustees of the Pension Fund shall have the authority to determine when, and to what extent, the Regular Maximum Monthly Benefit shall be increased. At no time shall the Trustees permit the Pension Fund to subject contributing Employers to excise tax or any other penalties.

(C) The EMPLOYER and the UNION acknowledge and agree that, subject to all of the terms and conditions set forth in the Pension Fund's Rules and Regulations, the following increases in monthly pension benefit payments will be implemented in accordance with the following table for Pensioners and beneficiaries in pay status on the effective dates set forth below:

| EFFECTIVE DATE | % INCREASE |
|---|---|
| July 1, 2002 | 2.0% |
| July 1, 2003 | 2.0% |
| July 1, 2004 | 2.0% |
| July 1, 2005 | 2.0% |

(D) The EMPLOYER agrees to increase its contribution to the Pension Fund in order to meet the requirements of the Employee Retirement Income Security Act of 1974, as amended, by such amount as is finally determined upon completion of an actuarial valuation.

5. The Pre-Paid Legal Fund

(A) The EMPLOYER shall continue to contribute to the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Prepaid Legal Services Fund one-half of one percent (0.50%) (or such sums as may be agreed upon from time to time by the UNION and the ASSOCIATION) of the wages payable to the

employees for the preceding pay period, to be administered and expended by the Trustees pursuant to the provisions of the Fund's trust instrument (identified below) for the purpose of making available certain legal services benefits to employees of the EMPLOYER and their dependents.[5] Such contributions will be due with respect to each employee of the EMPLOYER immediately upon the completion of nine (9) months of employment. The foregoing provision shall not apply to any employee who, during the twenty-four (24) months prior to his/her employment, was continuously employed for a period of twelve (12) months by an EMPLOYER signatory or party to the Collective Bargaining Agreement, for whom contributions shall be made from the employee's initial date of employment.

(B) In the event that legislation is enacted by the Federal, State or Municipal Governments levying a tax or other exaction upon the EMPLOYER for the purpose of establishing a Federally, State or Municipally administrated system of prepaid legal insurance under which the employees of the EMPLOYER are insured, the EMPLOYER shall be credited, against the sums otherwise payable hereunder for each pay period, with the amount of such tax or exaction payable by it for such pay period.

(C) Contributions to the Fund shall continue only so long as the Fund retains its tax exempt status.

6. Industry Training and Scholarship Fund

(A) The EMPLOYER shall continue to pay the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Industry Training and Scholarship Fund the sum of one dollar and fifty cents ($1.50) per month for each employee on the EMPLOYER'S payroll on the 15th day of each month (or such sums as may be agreed upon from time to time by the UNION and the ASSOCIATION) to be administered and expended by the Trustees pursuant to the provisions of the Fund's trust instrument (identified below) for the purpose of establishing and maintaining programs to train employees for promotion and advancement. Such contributions will be due with respect to each employee of the EMPLOYER immediately upon the completion of nine (9) months of employment. The foregoing provision shall not apply to any employee who, during the twenty-four (24) months prior to his/her employment, was continuously employed for a period of twelve (12) months by an EMPLOYER signatory or party to the Collective Bargaining Agreement, for whom contributions shall be made from the employee's initial date of employment.

(B) The EMPLOYER shall continue to pay the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. Industry Training and Scholarship Fund the sum of one dollar ($1) per month for each employee on the EMPLOYER'S payroll on the 15th day of each month (or such sums as may be agreed upon from time to time by the UNION and the ASSOCIATION) to be administered and expended by the Trustees pursuant to the provisions of the Fund's trust instrument and to provide educational scholarships and tuition aid to dependents of the EMPLOYER'S employees. Such contributions will be due with respect to each employee of the EMPLOYER from the employee's initial date of employment.

*5 Effective January 1, 2012 and for a period of one (1) year thereafter or such other time period as determined by the Funds, the 0.5% contribution to the Prepaid Legal Fund shall be suspended and reallocated to the Pension Fund.*

(C) In the event that legislation is enacted by the Federal, State or Municipal Governments levying a tax or other exaction upon the EMPLOYER for the purpose of establishing a Federally, State or Municipally administrated system of job training and scholarship insurance under which the employees of the EMPLOYER are insured, the EMPLOYER shall be credited, against the sums otherwise payable hereunder for each pay period, with the amount of such tax or exaction payable by it for such pay period.

7. The 401(k) Savings Plan and Trust

The EMPLOYER shall continue remitting employee contributions to the Trustees of the New York Hotel Trades Council and Hotel Association of New York City, Inc. 401(k) Savings Plan and Trust solely on behalf of each of its employees who has elected to defer a portion of his/her wages on a pre-tax basis to such Plan and Trust. The employee contributions remitted by the EMPLOYER shall be the aggregate amount of the wage deferrals deducted by the EMPLOYER in accordance with employees' elections for each pay period. The EMPLOYER shall, as required by law, remit such contributions to the Trustees as of the earliest date on which such contributions can reasonably be segregated from the EMPLOYER'S general assets. Any and all costs attendant to the establishment, implementation and administration of the 401(k) Plan, other than costs of deducting and withholding from employee wages and transmitting same to the Plan, shall be paid out of the employee elective deferral contributions.

8. Provisions Common to All Funds

The following provisions shall apply to all of the foregoing Funds:

(A) The terms and provisions of each Fund's trust instrument are specifically incorporated herein by reference.[6]

(B) If the Trustees shall complain that any EMPLOYER has not made full payment of contributions to the Trustees of any of the foregoing Funds, such complaint shall be filed with the Impartial Chairperson named in the Collective Bargaining Agreement, and the Impartial Chairperson shall make the necessary findings and award, and his/her decision shall be final and binding on the parties. Any EMPLOYER delinquent in contributions shall be required to pay said contributions and any audit or accounting fees in connection therewith if said delinquent contributions are paid prior to the institution of legal or arbitration proceedings. Any EMPLOYER against whom legal or arbitration proceedings are instituted shall be required to pay in addition to the amount

*6 Health Benefits Fund – Agreement and Restated Declaration of Trust dated January 1, 1999.*

*Pension Fund – Restated Agreement and Declaration of Trust dated January 1, 1976 and amended March 1, 1988.*

*Prepaid Legal Fund – Agreement and Declaration of Trust dated November 1, 1987.*

*Training and Scholarship Fund – Restated Agreement and Declaration of Trust dated July 29, 1987.*

*401(k) Savings Plan and Trust – Agreement and Declaration of Trust dated July 1, 2001.*

of the delinquency, interest at the then legal rate, audit fees, liquidated damages in the amount of twenty percent (20%) of the amount of the delinquency, attorneys' fees and costs.

(C) No employee of an EMPLOYER and no member of any such employee's family shall have the option to receive instead of the foregoing benefits any part of any contribution of the EMPLOYER. No employee or family member shall have the right to assign the benefits to which s/he may be or become entitled hereunder or under the trust instruments pertaining to each of the foregoing Funds, except as may otherwise be provided by law and the express provisions of a benefit plan, or to receive a cash consideration in lieu of such benefits, either upon termination of the trust therein created or through severance of employment or otherwise.

(D) During the term of this Supplemental Agreement, the UNION obligates itself to enter into no contract or agreement whereby any EMPLOYER engaged in the hotel business in the City of New York will not be obligated to pay the amount required to be paid to the Trustees as set forth above. During the term of this Supplemental Agreement, the UNION agrees to insert a clause in all of its Collective Bargaining Agreements with hotels employing members of the UNION engaged in the hotel business in the City of New York to the effect that the hotel shall pay to the Trustees under the trust instruments pertaining to each of the Funds the applicable sums set forth above (as the same may from time to time be modified according to the terms hereof), to be applied under the said trust instruments. This Paragraph (D) may be waived by an instrument in writing executed by the Board of Directors of the HOTEL ASSOCIATION OF NEW YORK CITY, INC. and the UNION.

(E) This Supplemental Agreement and the Collective Bargaining Agreement and each of the trust instruments pertaining to each of the Funds shall be construed as a single document, and all the provisions of the Collective Bargaining Agreement relating to the administration and enforcement thereof (including provisions for arbitration) shall apply to the administration and enforcement of this Supplemental Agreement, provided, however, that any controversy, claim, complaint, grievance or dispute arising out of or relating to the provisions of this Supplemental Agreement or the interpretation, breach, application or performance thereof, shall be referred by the UNION, the Trustees or the EMPLOYER for arbitration and determination to the Impartial Chairperson provided for in the Collective Bargaining Agreement.

(F) The Trustees, in their names as Trustees, may institute or intervene in any proceedings at law, in equity, or in bankruptcy for the purpose of effectuating the collection of any sums due to them from the EMPLOYER under the provisions of this Supplemental Agreement.

(G) The Trustees shall have the right to make such periodic audits of the EMPLOYER'S payroll records as they deem necessary. For purposes of this provision, payroll records shall include, but not be limited to, employee time cards, individual employee earnings records, Federal quarterly withholding and FICA tax returns (Form 941), State unemployment tax returns and EMPLOYER cash disbursement records.

(H) In the event of a dispute between the Trustees and the EMPLOYER, either party may submit same directly to the Impartial Chairperson for determination.

(I) The provisions of this Supplemental Agreement shall remain in full force and effect for the full term of the Collective Bargaining Agreement, but shall terminate and come to an end with the Collective Bargaining Agreement, or prior thereto by an instrument in writing executed by the Board of Directors of the HOTEL ASSOCIATION OF NEW YORK CITY, INC. and the UNION or, in the case of a non-ASSOCIATION hotel or concessionaire EMPLOYER, by an instrument in writing executed by the non-ASSOCIATION hotel or concessionaire EMPLOYER and the UNION.

(J) All contributions made prior to the date of this Supplemental Agreement by the EMPLOYER, or due from the EMPLOYER, under prior collective bargaining agreements and in the hands of the Trustees as of the date of this Supplemental Agreement (and not as of the date of this Supplemental Agreement, already applied to the purchase of insurance benefits for employees) and in whatever form or investments such contributions shall be, shall be deemed to be covered and controlled by, and embraced in and applied under, the terms of the within Supplemental Agreement and the trust instruments pertaining to each of the Funds, free from all rights and claims therein and hereto on the part of any EMPLOYER or of the UNION, with the same force and effect as if such contributions, in whatever form the same may be, had been contributed by the EMPLOYER immediately after the execution of the within Supplemental Agreement.

(K) The primary purpose of this Supplemental Agreement and the trust instruments pertaining to each of the Funds being to provide a comprehensive range of benefits designed to promote the health and well-being of the employees of the EMPLOYER and their families, it is understood that the form of the benefit plans funded by each of their respective Funds and of this Supplemental Agreement and of each of the trust instruments pertaining to the Funds, shall not give rise to a literal or formal interpretation or construction; such interpretation or construction shall be placed on this Supplemental Agreement and the trust instruments as will assist in the functioning of the plans for the benefit of employees and their families regardless of form.

(L) In no event will the EMPLOYER be entitled to the return of any part of any contribution hereafter made hereunder, or heretofore made under any prior collective bargaining agreement, provided, however, that an EMPLOYER who has made an overpayment of contributions as the result of mistake or arithmetical error and who notifies the Fund Trustees of such overpayment in writing within sixty (60) days of the due date to which such overpayment relates may receive a credit against future contributions due in the amount of the overpayment. The Fund Trustees shall have the sole discretion to determine the existence and amount of any claimed overpayment and whether, under the circumstances, the EMPLOYER is eligible for such credit.

(M) Regardless of the date on which the within Supplemental Agreement shall be executed, the within Supplemental Agreement shall be effective as of July 1, 2012 with the same force and effect as if it had been actually executed on that date.

(N) Neither the execution of this Supplemental Agreement, nor any provisions herein contained or contained in any other agreement affecting the same, shall be deemed to release the EMPLOYER from any contribution or contributions provided for in a prior Supplemental Agreement or any collective bargaining agreement and not yet paid to the Trustees under the terms of the Supplemental Agreement.

(O) In the event that the obligation of the EMPLOYERS to make EMPLOYER contributions shall terminate, or upon the liquidation of the one or more trust estates, the Trustees shall continue to apply the trust estate affected to the purposes set forth in its related trust instrument and described in the foregoing and none other, and upon the disbursement of the entire trust estate affected, such Trust shall terminate.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Agreement to be executed by their duly authorized representatives on the day and year first written above.

Peter Ward
President, New York Hotel and
Motel Trades Council, AFL-CIO

Joseph E. Spinnato
President, Hotel Association
of New York City, Inc.